1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Cora Skinner, et al.,

10           Plaintiffs,

11  v.

12  Tuscan Incorporated, et al.,

13           Defendants.

No. CV-18-00319-TUC-RCC

**ORDER**

14

15       This matter is one of several similar cases in this district.[1]  Here, Plaintiffs' claims

16  arise from Defendant Tuscan Incorporated's d/b/a Ten's ("Ten's" or "Defendant")

17  unauthorized use of risqué photos of Plaintiffs to advertise Defendant's strip club, Ten's.

18  Plaintiffs Cora Skinner, Jamie Edmondson Longoria, Jessica Rockwell, Lina Posada,

19  Lucy Pinder, Nikki Leigh, and Ursula Mayes ("Plaintiffs") raise state law claims of right

20  ─────────────────
21  [1] All cases relate to the unauthorized use of models' photographs and incorporate similar
    claims of right of publicity, false light, and Lanham Act violations. *See Mitcheson v. El
22  Antro, LLC*, No. CV 19–1598–GMS (D. Ariz. March 8, 2019); *Pepaj v. Paris Ultra Club,
    LLC*, No. CV 19–1438–MTL (D. Ariz. March 1, 2019); *Ratchford v. Dalton Corp.*, No.
23  CV–19–1421–SRB (D. Ariz. Feb. 28, 2019); *Longoria v. Whitefeather Ventures, LLC*,
    No. CV–18–394–SHR (D. Ariz. Aug. 10, 2018); *Gray v. LG&M Holdings, LLC*, No.
24  CV–18–2543–SRB (D. Ariz. Aug. 10, 2018); *Takeguma v. Freedom of Expression, LLC*,
    No. CV–18–2552–MTL (D. Ariz. Aug. 10, 2018); *Pinder v. 4716 Inc.*, No. CV–18–
25  2503–RCC (D. Ariz. Aug. 7, 2018); *Longoria v. Kodiak Concepts, LLC*, No. CV–18–
26  2334–DWL (D. Ariz. Jul. 25, 2018); *Electra v. Id. Business Holdings, LLC*, No. CV–18–
    1604–SRB (D. Ariz. May 25, 2018); *Geiger v. Creative Impact Inc.*, No. CV–18–1443–
27  JAT (D. Ariz. May 10, 2018).

28

of publicity/misappropriation of likeness and false light/invasion of privacy. In addition, Plaintiffs raise a two-part claim under the Lanham Act for false advertising and false association/endorsement.[2] Both parties have filed motions for summary judgment.[3] This matter has been extensively briefed, and oral arguments were held on September 1, 2020. (Docs. 39–42, 46–47, 50–52, 55, 59.) The Court now rules.

## I.   Timeliness of Plaintiffs' Motion for Summary Judgment

Plaintiffs filed their Motion for Summary Judgment approximately one month after the dispositive motion deadline. Plaintiffs' counsel asserts that the lapse should be excused because it was a simple mis-calendaring of deadlines, and courts favor decisions on the merits.

A court may grant an extension of time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect can occur when a party has mis-calendared a deadline. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1255 (9th Cir. 2010).

Plaintiffs have many similar cases being briefed in close proximity, and the failure to file a timely motion does not appear to be in bad faith. Further, Plaintiffs' arguments are identical to those included in their Response to Defendant's Motion for Summary Judgment, and so Defendant is not prejudiced by permitting the untimely request. The Court finds Plaintiffs' error constituted excusable neglect and therefore it will consider the motion.

## II.  Summary Judgment Standard of Review

A court may grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

---

[2] Plaintiffs' Lanham Act claim is listed in the Complaint under one cause of action, but as explained *infra*, the Complaint provides notice of two distinct claims.

[3] Also pending before the Court are three motions to exclude expert witnesses. (Docs. 43, 48, 49.) The Court addresses these motions in a separate order.

a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" when the disputed facts "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). But a disputed fact is only material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party establishes that there is no genuine issue of material fact, then the non-movant must come forth with evidence that there is a genuine disputed factual issue that may change the outcome of the lawsuit in the non-movant's favor. *Id.* at 248, 250. This showing does not have to be unquestionable; however, the non-movant "may not rest upon the mere allegations or denials of [her pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248; Fed. R. Civ. P. 56(e).

In general, a court must consider the evidence while making all inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. However, with dueling summary judgment motions, the court "review[s] each motion . . . separately, giving the non[-]moving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). "Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). Meaning, evidence from one party is not limited to that party's motion for summary judgment; a court may consider evidence from defendant's motion to determine plaintiff's motion and vice versa. *See Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001).

However, the necessary showing for each party to obtain summary judgment depends upon that party's burden of proof. And so, "a moving party with the burden of persuasion must establish beyond controversy every essential element of [its claim]." *Pub. Storage v. Sprint Corp.*, No. CV 14–2594–GW (PLAx), 2015 WL 1057923, at *4 (C.D. Cal. Mar. 9, 2015) (quoting *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)). The party without such burden need only (1) provide "evidence

negating an essential element" of a claim or (2) demonstrate that the non-moving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

### III.    Arizona False Light – Invasion of Privacy

#### a.  Statute of Limitations

The parties agree that Plaintiffs' false light claims are governed by a one-year statute of limitations under Arizona Revised Statute § 12–541. *See Watkins v. Arpaio*, 367 P.3d 72, 77 (Ariz. Ct. App. 2016). However, the parties disagree when these claims accrued. Defendant posits that the clock begins on the date of publishing. Plaintiffs counter that the continuing wrong doctrine applies, and the clock does not start until the photos were removed.

Plaintiffs lean heavily on *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) to show that the continuing wrong doctrine applies to their false light claims. The Court is baffled as to Plaintiffs' interpretation of this case. *Flowers* addressed the continuing tort doctrine as it related to alleged defamation in a defendant's memoirs. *Id.* The Ninth Circuit explained that the continuing wrong doctrine applies when there is no way to determine a singular moment that caused harm. *Id.* However, it noted that there is no such incertitude surrounding the publication of a book; the defamation occurs at the moment of publication. *Id.* Moreover, there were no further actions by defendant obscuring the accrual date. *Id.* In fact, the Ninth Circuit commented, "The only thing 'continuing' about this tort was [the plaintiff's] protracted failure to bring a lawsuit when she had the chance." *Id.* The court affirmed the dismissal of all tort claims related to the book publication—including the false light claim. *Id.* at 1133. Like *Flowers*, the dates Defendant published its advertisements on social media are identifiable dates of harm that preclude the continuing wrong doctrine. Even though the posting exists for viewing after the publication, this does not constitute a continuing injury.

Plaintiffs also cite *Cruz v. City of Tucson*, 401 P.3d 1018 (Ariz. Ct. App. 2017). This case is inapposite. Similar to *Flowers*, in *Cruz* the court explained that under the

continuing wrong doctrine, there must be a continuous series of wrongful actions for the accrual date to begin at termination. *Id.* at 1023. In this case, just as in *Cruz*, there are no continuous actions. Instead, there is one discrete posting of a Plaintiff's image per claim against Defendant. As such, the continuing wrong doctrine does not apply and cannot prolong Plaintiffs' time for filing.

Moreover, the Arizona appellate court has declined to utilize the continuing wrong doctrine in the context of false light claims. *Watkins*, 367 P.3d at 77. Instead, Arizona evaluates the statute of limitations for false light in the same manner as defamation, recognizing that accrual occurs on the date of publication. *See Kimm v. Brannan*, No. CV–14–1966 JWS, 2017 WL 3535015, at *7 (D. Ariz. Aug. 17, 2017), *aff'd,* 779 F. App'x 439 (9th Cir. 2019); *Larue v. Brown*, 333 P.3d 767, 772 (Ariz. Ct. App. 2014) (accrual occurs in defamation when material is posted on the web, and "later circulation of the original publication does not start the statute of limitations anew"); *Lim v. Sup. Ct. in and for Pima Cty.*, 616 P.2d 941, 942 (Ariz. Ct. App. 1980) (defamation accrual is time of publication); *cf.* Uniform Single Publication Act, Ariz. Rev. Stat. Ann. § 12–651(A) (cannot have multiple actions in tort based on one publication).

So, in this case any photo forming the basis of a false light claim must have been posted within one year of the filing of the Complaint on May 21, 2018. There is no factual dispute as to publication dates. Therefore, the Court grants summary judgment to Defendant as to the false light claims for all photos published prior to May 21, 2017.

> ### b. False Light Invasion of Privacy

For the photos published within the statutory limits, genuine issues of material fact remain precluding summary judgment.

To state a claim of false light, a plaintiff must demonstrate "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Doe v. Oesterblad*, No. CV–13–01300–PHX–SRB, 2015 WL 12940181, at *5 (D. Ariz. June 9, 2015) (quoting *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz.

Ct. App. 2015)); *see* Restatement (Second) of Torts ("Rstmt. 2d Torts") § 652E (Am. Law Inst. 1977). Actions shedding a false light on another need not be plainly stated; implication can be sufficient. *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 787 n.2 (Ariz. 1989).

i.  Falsity of Social Media Posts

Defendant first argues that the claim fails because the advertisements made no false statements about Plaintiffs. Moreover, Plaintiffs' photos were risqué, so using the unadulterated photo did not misrepresent the nature of the photos. However, "[a] false light cause of action may arise when . . . the publication of true information creates a false implication about the individual." *Reynolds v. Reynolds* ("*Reynolds*"), 294 P.3d 151, 156 (Ariz. Ct. App. 2013) (quoting *Godbehere*, 783 P.2d at 787).

Defendant's reasoning ignores the visual and written innuendo within its advertising. The misrepresentation is not necessarily the reproduction of the photos, but the connection between Plaintiffs and Defendant's strip club. A fact finder could decide that Plaintiffs' images and the corresponding text in the advertisements falsely suggest the Plaintiffs were somehow affiliated with, promoted, or employees at Defendant's strip club. For instance, one social media post features Plaintiff Skinner holding a heart over her breast. The text linked to the photo reads "Valentine[']s Week Special." (Doc. 41–1 at 10–12.) By superimposing the image with the words, Defendant has created a visual connection between Skinner's photo and Ten's Valentine's Day entertainment. All of the offending social media advertisements utilize this persuasive technique. (*See e.g.*, Doc. 40–1 at 8 (promoting entertainment on Christmas Eve with picture of Plaintiff Lucy Pinder with Christmas tree); Doc. 40–1 at 6–7 (advertising "Best Place to Watch Football" with photos of Plaintiff Jaime Edmonson Longoria in football jersey); Doc. 40–1 at 3 (social media post for "Fetish Fridays" with photo of Plaintiff Ursula Mayes donning lace, chains, and wrist cuffs).) Plaintiffs have presented evidence that some customers could be confused by the reproduction of Plaintiffs' photos and Defendant's corresponding advertisement. A reasonable fact finder may find that the post creates a misleading representation that Plaintiffs were affiliated with, endorsed, or engaged in the

activities at Ten's. Therefore, whether Defendant's use of Plaintiffs' photos in its advertisements placed Plaintiffs in a false light is a genuine issue of material fact precluding summary judgment.

### ii.   Highly Offensive

Next, Defendant claims that since Plaintiffs are models who have been photographed in various degrees of undress, the placement of Plaintiffs' photos in connection to its strip club could not possibly be highly offensive. The Court finds that assertion debatable. The Court agrees with the district judge in *Geiger v. Creative Impact, Inc.*, No. CV–18–01443–PHX–JAT, 2020 WL 3545560, at *3 (D. Ariz. June 30, 2020), that simply because a woman has modeled in risqué clothing (or even previously worked at a strip club) does not mean a reasonable person in a similar position could not be offended by the suggestion that the person is an exotic dancer at the defendant's strip club. *See also Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1136–38 (7th Cir. 1985) (publishing plaintiff's *Playboy* photos in *Hustler* without permission could cast plaintiff in highly offensive and false light raising genuine issue of fact). Moreover, Plaintiffs' have declared that the stripper lifestyle is disreputable and being impermissibly associated with such is offensive. Whether the use of Plaintiffs' images in association with Ten's is highly offensive is a genuine issue precluding summary judgment.

### iii.   Major Misrepresentation

Defendant next argues that any misrepresentation must be major, and its advertising was not. "[T]o qualify as a false light invasion of privacy, the publication must involve 'a major misrepresentation of [the plaintiff's] character, history, activities or beliefs,' not merely minor or unimportant inaccuracies." *Godbehere*, 783 P.2d at 787 (quoting Rstmt. 2d Torts § 652E cmt. C) (alteration in original). Like the "highly offensive" inquiry, a fact finder may find that linking a model to entertainment at a strip club presents a significant misrepresentation. However, a fact finder could also determine that any alleged misrepresentation is minor considering the nature of the photographs and the history of the Plaintiffs. The Court cannot decide this issue as a matter of law.

### iv.   No Mental or Emotional Injury

1   Defendant next asserts that Plaintiffs' false light claims only permit relief for

2   mental and emotional injury; therefore, since Plaintiffs have not pleaded such harm their

3   claims must fail.

4   "Unlike defamation, false light does not protect reputation or good name, but

5   rather protects mental and emotional interests." *Reynolds*, 294 P.3d at 156 (quoting

6   *Godbehere*, 783 P.2d at 787). Nonetheless, for a false light claim "a plaintiff may recover

7   even in the absence of reputational damage, as long as the publicity is unreasonably

8   offensive and attributes false characteristics." *Godbehere*, 783 P.2d at 787. "In [this] type

9   of case, the false innuendo created by the highly offensive presentation of a true fact

10  constitutes the injury." *Reynolds*, 294 P.3d at 156 (alteration in original). A judge does

11  not determine as a matter of law "any actual damage to [the plaintiff's] reputation" nor

12  does he decide "any emotional damage or damage to sensibility." *Desert Palm Surgical*

13  *Group*, 343 P.3d at 450. These determinations are left to the fact finder after deciding

14  whether a plaintiff has proven the false light claim. *See id.*

15  Here, Plaintiffs allege Defendant's social media posts falsely implied Plaintiffs

16  endorsed or worked at Ten's Nightclub. Furthermore, as noted previously, there is a

17  genuine issue whether this inference was highly offensive. Because Plaintiffs raise a

18  triable case that Defendant's advertisement with Plaintiffs' photos led to false innuendo

19  about Plaintiffs' association with Ten's strip club, and that this insinuation was highly

20  offensive, the extent and nature of the damage is for the fact finder to decide.

21      v.   Actual Malice – Knowledge of Falsity or Reckless Disregard

22  When a plaintiff is a public figure, a false light claim must also demonstrate actual

23  malice. *Godbehere*, 783 P.2d at 788. Actual malice occurs when a defendant makes a

24  statement knowing the statement was false or with reckless disregard of the truth. *See*

25  *Miller v. Servicemaster by Rees*, 851 P.2d 143, 145 (Ariz. Ct. App. 1992). In general,

26  actual malice is a factual issue. *Id.*

27  Defendant claims Plaintiffs cannot demonstrate that Defendant knowingly and

28  recklessly published false information because the photos were mere copies without

alteration. Again, Defendant ignores the connotations that could be made by linking its

advertisement for Ten's with Plaintiffs' images, despite the knowledge that Plaintiffs were in no way associated with the strip club. Whether this link was in reckless disregard to the truth depends upon a fact finder's determination of the postings' degree of innuendo (whether they placed Plaintiffs in a false light) and offensiveness (whether the false light was highly offensive to a similarly situated person). These are material factual issues.

Insofar as Defendant argues that the photos were not published "knowingly" because Defendant believed they were publicly available; Defendant has provided no evidence supporting this assertion. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Nor has Defendant shown it investigated whether the images were available for use to the public, and so this argument is unpersuasive. *See Geiger*, 2020 WL 3545560, at *5 (failing to investigate the origin of models' photos used in advertising and permission to use raised a genuine issue of fact as to actual malice).

vi.  <u>Public Character</u>

Defendant finally argues that Plaintiffs' false light claim fails because if Plaintiffs are the celebrities they claim to be, they have no right of privacy. It is true that if plaintiff is a "public character" then a false light claim is impermissible. *Godbehere*, 783 P.2d at 789. A key issue in this case is whether Plaintiffs are recognizable public figures. Plaintiffs have presented surveys that show some degree of recognizability. In contrast, when addressing elements of Plaintiffs' other claims, Defendant has highlighted Plaintiffs' modeling invoices to point out that Plaintiffs no longer enjoy the notoriety they once had. A genuine issue remains, and summary judgment is inappropriate.

In sum, there are too many genuine issues of material fact to permit summary judgment for either party on the false light claims.

**IV. Arizona Right of Publicity – Misappropriation of Likeness**

    *a.  Common Law Right of Publicity v. Statutory Right*

        i.  <u>Statutory Intent to Limit Right of Publicity to Soldiers</u>

Defendant argues that Plaintiffs' right of publicity claim fails because Arizona has

recognized a right of publicity for soldiers alone under Arizona Revised Statute § 12–761(B). If the state legislature had desired a broader scope for the right of publicity, Defendant asserts, it would have extended that right by statute.

Defendant ignores the circumstances leading up to the promulgation of the statute. Limiting the right of publicity was not the state legislature's primary consideration; it was the immediate desire to allow families of deceased soldiers a means of recovery. During the Iraq War, anti-war advocates used the names of dead soldiers to sell merchandise in protest. *Frazier v. Boomsma*, CV–07–08040–PHX–NVW, 2007 WL 2808559, at *1 (D. Ariz. Sept. 27, 2007). Families of the deceased soldiers sought to end the use of their loved one's names for political purposes and addressed their complaints to the Arizona State Legislature. *Id.* at *2. Arizona Revised Statute § 12–761(B) and its preceding Senate Bill 1014 were "a direct result of these complaints." *Id.*

At the time, the Arizona law did not recognize that a right of publicity was descendible, and so the legislators' intent was likely to extend that right beyond the grave. Originally, the right of publicity was considered a subset of the right of privacy under Rstmt. 2d Torts § 652C. *See* Restatement (Third) of Unfair Competition § 46, cmt. b (1995) ("Rstmt. 3d Unfair Competition") ("The principal historical antecedent of the right of publicity is the right of privacy."); *Geiger*, 2020 WL 3545560, at *7 n.7 (acknowledging that the Arizona District Courts previously found the state right of publicity to be a right of privacy under Rstmt. 2d Torts). But, under the right of privacy umbrella, the right of publicity would not survive the death of a plaintiff. *See* Ariz. Rev. Stat. Ann. § 14–3110 (2007) ("Every cause of action, except . . . invasion of the right of privacy, shall survive the death of the person entitled thereto . . . ."); *see also* Rstmt. 3d Unfair Competition §49 cmt. b ("In most jurisdictions the interest in personal privacy cannot be assigned and does not survive death."). However, the Arizona appellate court in *In re Estate of Reynolds v. Reynolds* ("*In re Reynolds*") clarified that the right of publicity is in essence a property right under Restatement (Third) of Unfair Competition §§ 46–49 that survives death, and that the statute precluding right to privacy claims by descendants did not apply to the right of publicity. 327 P.3d 213, 214–15, 217 (Ariz. Ct.

App. 2014). But *In re Reynolds*, a 2014 case, would not have been available at the time the Senate Bill was written in 2007—only the statutory language and district court cases interpreting the right of publicity as a privacy right for which descendants could not recover.

The proposed Senate Bill reflects an intent to expand the right of publicity to decedents' families. The original proposed bill was limited to deceased soldiers; it specified that the right of publicity survived death and could be exercised by a soldier's family member or designated representative. *See* Unauthorized Use of the Name, Portrait or Picture of a Deceased Soldier, S.B. 1014, 48th Leg., 1st Sess. (Ariz. 2007), available at https://www.azleg.gov/legtext/48leg/1R/bills/sb1014p.pdf (last visited August 30, 2020); *see also* Ariz. Rev. Stat. Ann. §§ 12–761(B) & (E) (utilizing similar language to proposed bill, but specifying the soldier is the holder of the right of publicity for which certain family members can recover upon the soldier's death).

Furthermore, the statutory language acknowledges that it was not meant to override the right of privacy, which encompassed the right of publicity. *See* Ariz. Rev. Stat. Ann. § 12–761(E) ("The rights and remedies provided in [A.R.S. § 12–761] supplement any other rights and remedies provided by law, including the common law right of privacy."). This is further evidence that the concern when enacting the statute was to expand the right of publicity, not limit it.

Defendant excerpts Arizona State Senator Robert Blendau's statements from the hearing of the Senate Committee on Commerce and Economic Development in an attempt to show that the Arizona State Legislature "deliberately chose to limit this right to the American military, and not to extend it to civilians." (Doc. 39 at 9.) Again, this ignores the context. The broader focus of the hearing was on inclusivity of the families' descendible interests, not exclusivity. Blendau was concerned that a deceased movie star's estate could recover from injury (through copyright) but not a soldier's family (through a right of publicity). He commented, "You know when a movie star or something dies, like John Wayne, you're not allowed to use his image without his permission but yet the newspaper is able to publish . . . an obituary and an article and

maybe we can look under those laws to figure out what kind of language we can use that would . . . let the paper . . . publish news or whatever they wanted, but keep people from using [the soldier's likeness] in a manner that . . . the relatives would not support." Hearing on S.B. 1014 before the S. Com. & Econ. Dev. Comm., 48th Leg., 1st Sess. (Ariz. 2007) (statement of R. Blendau, Member, S. Com. & Econ. Dev. Comm.), available at http://azleg.granicus.com/MediaPlayer.php?view_id=13&clip_id=54 (last visited August 30, 2020). The Senate Committee did not consider whether private citizens should also enjoy a right of publicity; the focus was on establishing a right for the families of fallen soldiers while balancing freedom of speech. Defendant's contention that the legislature could have extended that right to private citizens if it wanted disregards that the statute was in response to a specific situation, and the extension of the right of publicity to other persons was not part of the discussion. Therefore, the Court cannot find that this statute was meant to limit the right of publicity to soldiers alone. *See Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 547 (Ariz. 2014) ("If the legislature seeks to preempt a cause of action [,] . . . the law's text or at least the legislative record should say so explicitly.") (citation omitted) (alteration in original).

### ii.  Arizona Recognizes Right of Publicity

In addition, Arizona has recognized a right of publicity at the appellate level, and there is no indication that it would not recognize this right at the Arizona Supreme Court. *See, e.g.*, *In re Reynolds*, 327 P.3d at 216 ("We hold that Arizona recognizes a right of publicity."); *see also Geiger*, 2020 WL 3545560, at *7 n.6 (following the state appellate court's lead, right of publicity is an Arizona cause of action under Rstmt. 3d Unfair Competition); *ACT Grp., Inc. v. Hamlin*, No. CV–12–567–PHX–SMM, 2014 WL 4662234, at *8 (D. Ariz. Sept. 18, 2014), *reconsideration denied,* 2015 WL 11117191, at *2 (D. Ariz. Apr. 27, 2015) (acknowledging that in accordance with *In re Reynolds*, a right of publicity exists under Arizona law); *Pooley v. Nat'l Hole-In-One Ass'n*, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000) ("The Court sees no reason why a claim for invasion of the right of publicity should not be recognized in Arizona.").

Defendant's argument that the recognition of the right of publicity in *In Re Reynolds* is merely obiter dictum is unpersuasive. Obiter dictum is "a statement 'made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive).'" *See Best Life Assur. Co. of Calif. v. C.I.R.*, 281 F.3d 828, 834 (9th Cir. 2002) (quoting *Black's Law Dictionary* 1100 (7th ed. 1999)). In *In Re Reynolds*, the Arizona Court of Appeals specifically held that there was a right of publicity, but the plaintiff had not established the elements necessary to state a claim. *Geiger*, 2020 WL 3545560, at *7 n.6.

### iii.   Restatement Not in Conflict

Defendant next asserts that the statutory right of publicity under Arizona Revised Statute § 12–761(B) preempts the Restatement's right of publicity because they are in conflict. The Court disagrees. Even where the state court has not acknowledged a common law right, Arizona applies the Restatement in the absence of conflicting law. *Pooley*, 89 F. Supp. 2d at 1111; *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962, 968 (Ariz. 1990). Restatement (Third) of Unfair Competition recognizes the right of publicity. Rstmt. 3d Unfair Competition § 46; *see In re Reynolds*, 327 P.3d at 215; *see also Geiger*, 2020 WL 3545560, at *7 nn.6–7 (finding a right of publicity through both the common law and the application of the Restatement (Third) §§ 46–49). Moreover, Defendant has not presented a persuasive argument that the Restatement is preempted because of the statutory extension of the right of publicity to soldiers. *See Orca Commc'ns Unlimited*, 337 P.3d at 547 ("If the legislature seeks to preempt a cause of action [,] . . . the law's text or at least the legislative record should say so explicitly.") (citation omitted) (alteration in original). The soldiers' right of publicity statute clearly states that any rights granted therein supplement those available at common law and as demonstrated *supra*, the legislative intent was not meant to limit the cause of action. *See* Ariz. Rev. Stat. Ann. § 12–761(E) (soldiers' statute meant to supplement any other legal right). So, even if there were no common law right of publicity, there is a right of publicity under the

1    Restatement.

2                    iv.   Revised Arizona Jury Instructions Not Mandatory Authority

3            As to Defendant's claim that this Court should not find a right of publicity because

4    the Revised Arizona Jury Instructions ("RAJIs") do not recognize any appellate case law

5    in support, the Court notes that the RAJIs "are standard jury instructions created by the

6    State Bar of Arizona. They are not approved by the Arizona Supreme Court, and their use

7    is not mandatory." *Thues v. Ryan*, No. CV–13–00644–PHX–NVW, 2014 WL 3571687,

8    at *21 n.7 (D. Ariz. July 21, 2014). This argument, therefore, does not convince the Court

9    it must deny Plaintiffs' cause of action.

10           In conclusion, the Court finds Arizona recognizes a right of publicity and

11   Plaintiffs may raise this claim.

12                    b.   Statute of Limitations – Right of Publicity

13           Having established the right of publicity, the Court now considers whether

14   Plaintiffs' claims are barred by the statute of limitations. Defendant contends that since

15   misappropriation of likeness is a form of invasion of privacy, which has a one-year

16   statute of limitations, the right of publicity should also follow the one-year statute of

17   limitations. At oral argument, Plaintiffs contended that the statute of limitations is

18   unclear, and regardless, none of their claims are barred because the cause of action did

19   not accrue until the date the photographs were removed from Defendant's social media.

20           Defendant's argument fails to prove the statute of limitations is one year. The

21   Court agrees with District Judge Susan R. Bolton's recent decision which explains that

22   the Arizona Court of Appeals determined that the right of publicity is rooted in property,

23   not privacy. *Electra v. Idaho Business Holdings LLC*, No. CV-18-01604-PHX-SRB, Doc.

24   79 at 5 (D. Ariz. Sept. 24, 2020) (determining that the right of publicity is more akin to a

25   property right because it is intended to protect from injuries to the commercial value of a

26   plaintiff's likeness, and is unlike a privacy right which protects "personal injuries of the

27   sort remedied by a claim for, e.g., invasion of privacy by intrusion or publication of

28   private facts.") (citing Rstmt. 3d Unfair Competition § 46 cmt. a)); *In re Reynolds*, 327

P.3d at 216 ("[T]he right of publicity is more akin to a property right, the breach of which is measured by resulting pecuniary loss, than a personal right whose violation results in emotional injury."). Therefore, Judge Bolton declined to follow the limitations period for violations of privacy. *Id.* Moreover, if the right of publicity is deemed based in property, in Arizona property torts are not subject to a one-year statute of limitations. *See* Ariz. Rev. Stat. Ann. § 12-542(3) (setting a two-year statute of limitations for "injury to the . . . property of another."). Therefore, the Court cannot find that Defendant has proven Plaintiffs' right of publicity claims are time-barred.

### c. *Prima Facie Case of Right of Publicity*

Defendant failed to argue that Plaintiffs could not establish the elements of this claim, instead it limited its argument to the existence of the right of publicity in Arizona. Regardless, the Court will address this claim and finds Plaintiffs have shown there is no genuine material issue in dispute.

"To prevail on a right of publicity claim, a plaintiff must show (1) the defendant's use of the plaintiff's name or likeness, (2) the appropriation of the plaintiff's name or likeness to the defendant's advantage, (3) lack of consent, and (4) resulting injury." *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1100 (D. Ariz. 2006) (citing *Pooley*, 89 F. Supp. at 1111). Appropriation of likeness is not limited to celebrities. "[T]he identity of even an unknown person may possess commercial value." *In re Reynolds*, 327 P.3d at 215 (quoting Rstmt. 3d Unfair Competition § 46 cmt. d); Rstmt. 3d Unfair Competition § 49.[4]

### i. Use of Likeness and Consent

To begin, it is undisputed that Defendant used Plaintiffs' likeness. And although Defendant states repeatedly that the acquired photos were "publicly available," it offers no evidence that it had consent to publish. This weighs in Plaintiffs' favor.

---

[4] Because an unknown person may bring a right of publicity claim, the identifiability of a plaintiff measures the monetary relief available; it does not measure a plaintiff's ability to establish beyond controversy the essential elements of her claim. *See* Rstmt. 3d Unfair Competition §46 cmt. d ("[T]he identity of even an unknown person may possess commercial value. . . . Thus, an evaluation of the relative fame of the plaintiff is more properly relevant to the determination of appropriate relief.").

1

ii.  Defendant's Advantage and Plaintiffs' Injury

Plaintiffs asserts that the use of their images created an advantage for Defendant by "getting Plaintiffs to appear for free in these advertisements." (Doc. 41 at 5.) In addition, Plaintiffs were injured by "being denied the fair market revenue [they] would have received but for Defendant's misappropriations." (*Id.*)

On a basic level, Defendant was advantaged by its use of Plaintiffs' images. As Defendant admits, strip club customers are more likely to frequent establishments with attractive women. Defendant also concedes it used the photos because the Plaintiffs are attractive women. Therefore, Defendant's inclusion of Plaintiffs' photos in its advertising was used to advertise Ten's goods, "enhanced the marketability" of Ten's, and was "integral" to the advertisement. *See Pooley*, 89 F. Supp. 2d at 1112–13. Defendant's use was for the purposes of trade and functioned to its commercial advantage. *See id.*

Moreover, "[i]t is beyond controversy that the failure to pay any Plaintiff for the use of her Image harmed each Plaintiff." *Gray v. LG&M Holdings, LLC*, No. CV–18–2543–SRB, Doc. 122 at 7 (D. Ariz. Aug. 10, 2018). In further support of injury, Plaintiffs submitted a survey suggesting Plaintiffs' photos may have influenced potential strip club attendees' choice whether to patronize Ten's.  Plaintiffs have met their burden of showing that Defendant misused their images without consent and that from this use Defendant enjoyed a benefit and Plaintiffs suffered an injury.  Therefore, summary judgment will be granted to Plaintiffs as to liability under the right of publicity.

**V. Lanham Act**

*a.  Pleading of False Advertising and False Association Claim*

Defendant believes that Plaintiffs' Complaint did not raise false advertising and false association claims under the Lanham Act, but merely asserted one false endorsement claim which should be dismissed. Count II of Plaintiffs' Complaint raises Lanham Act violations under 15 U.S.C. § 1125(a). This section provides:

**(a) Civil action**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). Section (a)(1)(A) is considered an action for "false association." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). False endorsement "is a type of false association claim." *Lemon*, 437 F. Supp. 2d at 1095. Moreover, an action under § (a)(1)(B) raises a "false advertisement" claim. *Lexmark Int'l*, 572 U.S. at 122. Given the factual allegations corresponding to both subsections and recognizing that Plaintiffs' cause of action under the Lanham Act, 15 U.S.C. § 1125, encompassed both § (a)(1)(A) and § (a)(1)(B), Defendant was properly notified of Plaintiffs' false association and false advertisement claims.

     *b.  False Advertising – 15 U.S.C. § 1125(a)(1)*

     Both parties assert that they should be afforded summary judgment on the false advertising claim. However, only Defendant is correct. Plaintiffs must show the following to avoid dismissal of their false advertising claim: (1) that their injury falls within the "zone of interests" that are safeguarded by the Lanham Act, and (2) that the resulting injury was proximately caused by a violation of the Act. *Lexmark Int'l.*, 572 U.S. at 130, 133.

     i.  <u>Zone of Interests</u>

     For false advertising claims, the Lanham Act's primary interest is in "protect[ing]

persons engaged in commerce against unfair competition" by "making actionable the deceptive and misleading use of marks." 15 U.S.C. § 1127; *Lexmark Int'l*, 572 U.S. at 131. So, "[t]o come within the zone of interests [in a Lanham Act false advertising claim], a plaintiff [must] allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l*, 572 U.S. at 131–32. If the parties are not directly in competition, a plaintiff must show that the injury plaintiff suffered is "harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

Plaintiffs allege that they suffered an injury to their commercial interests because Defendant pilfered their photos instead of paying for a photo shoot. Lost income from a missed photo shoot could be construed as a financial injury to Plaintiffs, in that the sale of their goods—i.e. their photos—has been impeded. However, any alleged false advertising must also "be harmful to plaintiff's ability to compete with defendant." *Id.* Not being hired by Defendant is not equivalent to not being able to compete with Defendant.   Plaintiffs have not shown their competitive edge was affected from Defendant's advertising.

In addition, Plaintiffs' contention that they suffered a competitive commercial injury is undermined because the parties' commercial interests do not overlap. Clearly, the parties are not direct competitors, as Plaintiffs are models and Defendant runs a strip club. But commercial competitive interests need not be direct to successfully allege that a false advertisement led to a commercial injury. *Lexmark Int'l.*, 572 U.S. at 136. Nonetheless, Plaintiffs' bare assertion that their commercial interests overlap with Defendant's is simply not supported by any evidence. *Nelson*, 83 F.3d at 1081–82 ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). There is no indication that the consumer money would otherwise go to hiring Plaintiffs for modeling if not for Defendant's false advertisement. Moreover, Plaintiffs make no allegations that their ability to obtain modeling jobs has been affected by the false advertisement. *See cf. Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 291–92 (D. Conn. 2019) (denying motion to dismiss false advertisement claim where models'

alleged injury to commercial interest was reputational injury effecting plaintiffs' ability to be hired by commercial clients, and injury was proximately caused by defendant's false advertising). Plaintiffs' speculation is insufficient to show "their position in the marketplace has been damaged." *See Lexmark Int'l*, 572 U.S. at 137.

Moreover, while Plaintiffs have suggested that they suffered embarrassment from being wrongly affiliated with Ten's, they have produced no evidence that this association has damaged their reputation or their ability to compete in any fashion. Without direct competition or comparative advertising, Plaintiffs must show actual injury from the Defendant's deception and have failed to do so. *See TrafficSchool.com, Inc.*, 653 F.3d at 826; *see also B. Sanfield Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580–81 (7th Cir. 2001) (indirect competition requires showing of "past or potential" injury); *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 347 (S.D.N.Y.) ("The Second Circuit has expressly disfavored presumptions of harm in cases where the products are not obviously in competition or where the defendant's advertisements make no direct reference to any competitor's products . . . .") (citation and quotation marks omitted).

ii.   Proximate Cause of Harm

Even if the Court found Plaintiffs' injury implicated the zone of interests, they have not established causation. To state a claim of false advertising, a plaintiff must show that "the plaintiff has been or is likely to be injured *as a result of the false statement*." *Gaby's Bags, LLC v. Mercari, Inc.*, CR 20–00734 WHA, 2020 WL 1531341, at *2 (N.D. Cal. Mar. 31, 2020) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (emphasis added). In other words, "[c]ourts have found that causation just requires that the false advertising proximately cause the claimed injury." *Wyndham Vacation Ownership v. Reed Hein & Assocs.*, LLC, No. 6:18–cv–02171–GAP–DCI, 2019 WL 3934468, at *4 (M.D. Fla. Aug. 20, 2019) (alteration in original). In general, proximate cause requires that a plaintiff's "economic or reputational injury flow[s] directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes [consumers] to withhold trade from the

plaintiff." *Lexmark Int'l*, 572 U.S. at 133. However, a plaintiff "cannot obtain relief without *evidence* of injury proximately caused by [defendant's] alleged misrepresentations." *Id.* at 140 (emphasis in original).

In sum, Plaintiffs cannot show that their injury was caused by false advertising. Plaintiffs' only alleged injury (the loss of photoshoot income) was neither caused by consumers withholding money, nor was it a result of consumer deception; the injury resulted from Defendant's failure to pay for the photos. Defendant was not deceived by its own misleading advertising, and no consumer was hoodwinked into not paying Plaintiffs but instead giving Defendant his or her money. The lost modeling income may be pertinent to other claims–such as the right of publicity–but does not establish the proximate cause necessary for false advertising. *See Gibson v. BTS N., Inc.*, No. 16–24548–Civ–COOKE/TORRES, 2018 WL 888872, at *5 (S.D. Fla. Feb. 14, 2018) (granting summary judgment on plaintiffs' false advertising claim because "compensation for the fair market value of the use of their image" was irrelevant to whether defendant's advertising was false and did not necessarily show proximate cause).

Plaintiffs have failed to support their false advertising claim and so it must be dismissed.

### c. False Association–15 U.S.C. § 1125(a)(1)

In essence, the crux of a false association claim depends upon the answer to the question: Would a reasonably prudent consumer in the marketplace be confused? *See* 15 U.S.C. §1125(a); *Lemon*, 437 F. Supp. 2d at 1095. Here, neither Plaintiffs nor Defendant has proven that the undisputed facts conclusively answer this question.

To establish this claim, a plaintiff must demonstrate that a defendant's advertisement was placed in commerce and made a confusing or misrepresentative "false designation of origin, false or misleading description, or representation of fact" that obscured the true characteristics of a defendant's services or goods. *Freecycle Network, Inc.*, 505 F.3d at 902. A false representation may cause confusion as to either the source and sponsorship of, affiliation with, or connection to a defendant's goods or services. *See*

15 U.S.C. § 1125(a)(1)(A). In general, "'[l]ikelihood of confusion is a factual determination,' and 'district courts should grant summary judgment motions regarding the likelihood of confusion sparingly.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010) (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002) (alteration in original).

### i. *Sleekcraft* Factors

As noted in the Court's assessment of Plaintiffs' false advertising claim, the parties' markets are not competitive; however, the "goods are related" in that they both use photos of beautiful women to generate income. Plaintiffs are beautiful women who pose for photos for money, Defendant uses photos of beautiful women to entice customers to frequent its establishment.

When the parties' "goods are related, but not competitive," the district court considers eight factors to evaluate confusion. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). These include: "(1) the similarity of the marks; (2) the relatedness of the two [parties'] services; (3) the marketing channel used; (4) the strength of [plaintiff's] mark; (5) [defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). When, as here, the advertisement has been posted online, the most important factors are the first three–named the "Internet Troika." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 989 (9th Cir. 2009). Still, "[t]he factors should not be rigidly weighed; [courts] do not count beans." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

### ii. Similarity of Marks

Obviously, Defendant's ads are similar to Plaintiffs' images; there is no dispute that the photos in the advertisements are carbon copies of Plaintiffs. Defendant claims the similarity is inconsequential though because similarity does not go to whether Plaintiffs are recognizable. While this is true, recognizability is a measure of the strength of Plaintiffs' mark, not the similarity. "When the alleged infringer knowingly adopts a mark

similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 813 (9th Cir. 1997) (quoting *Sleekcraft Boats*, 599 F.2d at 354). This element weighs in Plaintiffs' favor.

iii.  <u>Relatedness of the Parties' Services or Goods</u>

Here again, Plaintiffs argue that their services are similar because both try to attract clients through the use of images of beautiful women. Further, they argue, both parties are targeting a similar market through social media. Defendant argues that since Plaintiffs have admitted their celebrity is completely unrelated to Defendant's strip club, Defendant believes this factor should weigh in its favor.

When a plaintiff's commercial value is linked to celebrity status, the goods or services provided are related to the plaintiff's "reasons for or source of . . . fame." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001). "To determine whether goods are related, courts may consider whether the goods are complementary, whether the products are sold to the same class of purchasers, and whether the goods are similar in use and function." *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 893 (N.D. Cal. 2019). Here, Plaintiffs' source of fame is their successful–and in part risqué–photoshoots and their social media presence. Their fame is also due to each woman's beauty. Defendant used Plaintiffs' photos on social media allegedly because they are beautiful women. On a broad scale, the goods are similar and complimentary in that both use photos of beautiful women on their social media sites to pique viewers interest in their goods. However, the parties do not sell their goods to the same purchasers. Plaintiffs derive income from being hired for photoshoots; Defendant from customers' entrance fees, entertainment, and drinks at the strip club. This factor tips slightly in Defendant's favor.

iv.  <u>Contemporaneous Use of Social Media for Marketing</u>

Both parties use identical social media platforms to market, but social media is often used in this manner today. "[T]he shared used of the internet as a marketing channel is ubiquitous and, thus, does not shed much light on the likelihood of consumer

- 22 -

confusion." *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1077 (N.D. Cal. 2012) (citing *Network Automation v. Advanced System Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). This factor is equivocal.

### v. Strength of Plaintiffs' Mark

There is a genuine issue of fact as to whether Plaintiffs are recognizable to members of the community for which Defendant's advertising is focused. For cases involving alleged celebrities, a strong mark is demonstrated by how recognizable the celebrity is amongst relevant consumers. *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992). Plaintiffs have presented a survey indicating a small percentage of those surveyed felt they recognized Plaintiffs. They have also provided evidence that they have a strong social media following. Defendant has submitted no counter-survey. However, Defendant has pointed to evidence that suggests Plaintiffs celebrity success appears to be in the past, and their current recognizability is questionable. The scale for this factor could tip to either side.

### vi. Defendant's Intent

Plaintiffs assert that by using their image, Defendant intended to attract customers through the misleading suggestion that Plaintiffs worked for, were affiliated with, or endorsed Ten's. Defendant claims the photos were chosen simply to highlight attractive women, not due to Plaintiffs' notoriety, and were not meant to confuse the consumer or imply endorsement. Intent to confuse is an issue of fact that the Court cannot decide here. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

### vii. Evidence of Actual Confusion

Whether there was evidence of actual confusion is also an issue for the fact finder. "[S]urvey evidence may establish actual confusion." *Fortune Dynamic, Inc.*, 618 F.3d at 1035 (quoting *Thane Intern.*, 305 F.3d at 902). Plaintiffs have presented survey evidence indicating that approximately 66 percent of interviewees believed that Plaintiffs would likely participate in the strip club activities at Ten's, 65 percent thought Plaintiffs were in some way affiliated with Ten's, and 87 percent felt that it was very or somewhat likely that the Plaintiffs were representative of those employees that performed at Ten's. *See*

*Warner Bros. Entm't v. Glob. Asylum, Inc.*, No. CV 12–9547 PSG (CWx), 2012 WL 6951315, at *10 (C.D. Cal. Dec. 10, 2012) ("Generally, confusion levels of 25 to 50 percent provide 'solid support' for a finding of likelihood of confusion."). Furthermore, the use of identical pictures in Defendant's advertising increases the likelihood that confusion has occurred. *See BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 CIV. 1621 (NRB), 2019 WL 3202923, at *5 (S.D.N.Y. July 16, 2019) ("[T]he likelihood of confusion is obvious" when defendant's mark imitates plaintiff's.)

However, Defendant may undermine the weight a fact finder gives to the survey evidence through questioning the survey methods and the clarity of the questions presented. There is a triable issue here whether these percentages and the identical use constituted actual confusion.

### viii.   Likelihood of Expansion into Other Markets

This factor is inapplicable since Plaintiffs have no intent to enter into the strip club business and have not alleged Defendant's advertising hindered the expansion of their goods in any way.

### ix.   Purchasers' Degree of Care

Plaintiffs argue that little care is exercised by strip club participants because strip clubs are relatively cheap. Defendant counters that this factor is irrelevant but, if considered, weighs in its favor because strip club attendees are sophisticated and picky about the level of attractiveness in the women they desire at a nightclub. "[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Kiva Health Brands LLC*, 402 F. Supp. 3d at 894.  Neither party provided evidence of either the cost of strip clubs in general or the sophistication of strip club clientele. These arguments are therefore up for debate.

Because a majority of the *Sleekraft* factors could "tip in either direction" summary judgment as to Plaintiffs' false association claim is inappropriate. *See Fortune Dynamic, Inc.*, 618 F.3d at 1039.

**VI. Collateral Estoppel**

Because there are so many similar cases pending, Defendant wants this Court to follow the cases that have ruled in its favor and conclude that Plaintiffs are estopped from raising the same legal issues in this case. *See e.g., Toth v. 59 Murray Enters.*, 15 Civ. 8028 (NRB), 2019 WL 95564 (S.D.N.Y. Jan. 3, 2019); *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 238 (S.D.N.Y. 2019), *reconsideration denied,* No. 15 CIV. 8168 (ER), 2019 WL 5188932 (S.D.N.Y. Oct. 15, 2019). Specifically, Defendant believes Plaintiffs Posada, Skinner, Mayes, and Rockwell cannot relitigate their Lanham Act false endorsement claims. In addition, Defendant argues the decision in Maricopa County Superior Court precludes Plaintiffs Pinder and Mayes from raising their right of publicity claims here.

Typically, collateral estoppel only prevents the same parties from litigating the same issues decided in another case. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Even though Defendant was not a party in the previous cases, it argues in this instance "non-mutual defensive collateral estoppel" applies, which "precludes 'relitigation of an issue by its current opponent who was a party to the prior case and lost on the very issue which the opponent seeks to relitigate in the current action.'" (Doc. 39 at 22) (quoting *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1038 (N.D. Cal. 1990). To be effective, (1) the issues must be the same in both cases, (2) the party being estopped must have been a litigant in the prior case, and (3) the issue in the prior case must have been decided on the merits. *Crafty Prods. v. Michaels Cos.*, 424 F. Supp. 3d 983, 990 (S.D. Cal. 2019).

This Court is not bound by the opinions of the Southern District of New York. "District court decisions cannot be treated as authoritative on issues of law. . . . Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by another district judge of similar contentions. . . . Where a second judge believes that a different result may obtain, independent analysis is appropriate." *In re Walk v. Thurman*, 2012 WL 3292934, at *7 (D. Utah Aug. 10, 2012); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal

district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

First, the Southern District of New York decided that Plaintiffs had failed to show actual confusion because they had not provided survey evidence. *See Gibson*, 391 F. Supp. 3d at 247. Here, Plaintiffs have. Also, in the second District of New York case, *Toth*, the court found Plaintiffs had not demonstrated a strong mark. *Toth*, 2019 WL 95564, at *7. The undersigned believes the strength of mark is debatable and the outcome of this genuine issue of fact plays into various factors in determining the false association claim. Moreover, courts in New York and Florida have discredited Plaintiffs' expert witness' report, *see Toth*, 2019 WL 95564, at *7–8 *and Edmondson v. Velvet Lifestyles*, LLC, 15–cv–24442, 2019 WL 670201, at *8 (S.D. Fla. Jan. 15, 2019), but, as discussed in the corresponding order on experts, the Court finds the testimony of Plaintiffs' experts relevant and reliable such that any credibility issues should be in the hands of a jury. These differences preclude judgment as a matter of law.

Moreover, despite the preclusion in certain district courts, Plaintiffs' expert testimony has been permitted in others, including in all similar District of Arizona cases litigated thus far. *Geiger*, 2020 WL 3268675, at *2–4 (allowing testimony of Buncher, and Chamberlin, and rejecting defendant's argument that expert testimony was flawed, noting that the objections went to weight, not admissibility); *Electra*, No. CV-18-01604-PHX-SRB, Doc. 80 (D. Ariz. Sept. 24, 2020) (denying motions to strike Buncher, and Chamberlin's expert testimony and reports); *Gray*, No. CV–18–2543–SRB, Doc. 121 (same); *see also Canas v. Flash Dancers, Inc.*, No. 3:16–cv–392–J–32JBT, 2020 WL 588290, at *6 (M.D. Fla. Feb. 6, 2020) (affirming the use of Buncher's testimony on consumer confusion for Jamie Edmonson and Lina Posada's Lanham Act claims).

As to the state trial court decision, the district court can discredit a state appellate court finding when "it is convinced by other persuasive data that the highest court of the state would decide otherwise." *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017). For the reasons previously outlined, the District Court does not believe the lone decision from the state trial court–denying Arizona recognizes a right of

publicity–is in line with what the Arizona Supreme Court would hold. This Court does not foresee the state's highest court deviating from the court of appeals' holding in *In re Reynolds*. Furthermore, the Maricopa County Superior Court dismissed the false light claims because it did not find the content highly offensive because it associated the litigants with a cowboy bar, not a strip club. The instant case is distinguishable. And so, evaluating the right of publicity and false light claims independently is appropriate, and the Court's analysis leads it to a different result.

**VII.      John Doe Defendants**

Finally, Plaintiffs agreed during oral argument that their twenty unnamed John Doe Defendants should be dismissed. The Court shall grant this request.

Accordingly, IT IS ORDERED:

1) Plaintiffs' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. (Doc. 41.)

   a. The Motion for Summary Judgment is GRANTED in favor of Plaintiffs' as to liability under the right of publicity claims.

   b. The Motion for Summary Judgment is DENIED as to all other claims.

2) Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

   a. The Motion for Summary Judgment is GRANTED in favor of Defendant for Plaintiffs' false light–invasion of privacy claims as time barred, EXCEPT for those photos posted after May 21, 2017. All claims for photos posted after this date shall proceed to trial.

   b. The Motion for Summary Judgment is GRANTED in favor of Defendant for Plaintiffs' false advertising claims under the Lanham Act.

   c. The Motion for Summary Judgment is DENIED for Plaintiffs' false association claims under the Lanham Act.

3) John Doe Defendants 1–20 are DISMISSED.

4) A joint proposed pretrial order shall be lodged within thirty (30) days from the date of this Order. The Court shall set a pretrial conference upon receipt of the

joint proposed pretrial order. The attorney responsible for trial shall appear and participate in the pretrial conference. At the conference, the Court will set deadlines for filing and disposing of the following matters: proposed voir dire, jury instructions, trial memorandum, deposition testimony to be used at trial, and motions in limine. No trial date is set at this time.

5) Should the parties wish to engage in settlement negotiations in front of a Magistrate Judge, the parties shall file a Joint Notice to the Court indicating the desire to have this case referred for settlement.

Dated this 7th day of October, 2020.


_____

Honorable Raner C. Collins
Senior United States District Judge

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9        ,                                    No. CV-XXX-XXXXX-TUC-RCC

10                      Plaintiff,            **[Proposed Joint Pretrial Order]**

11    v.

12        ,

13                      Defendant.

14        Pursuant to the Scheduling Order previously entered, the following Proposed

15    Joint Pretrial Order reflects the agreement of the parties and shall, upon approval of the

16    Court, be incorporated into the Final Pretrial Order:

17    **I.      IDENTIFICATION OF PARTIES AND COUNSEL**

18    **II.     NATURE OF ACTION**

19            Provide a concise statement of the type of the case, including the cause of action

20            and the relief sought.

21    **III.    STATEMENT OF JURISDICTION**

22            State the claims and cite the statutes which give this Court jurisdiction over each

23            claim.

24    **IV.     CONTENTIONS OF THE PARTIES**

25            With respect to each count of the complaint, counterclaim or cross-claim, and to

26            any defense, affirmative defense, or the rebuttal or a presumption where the

27            burden of proof has shifted, the party having the burden of proof shall list the

28            elements or standards that must be proven in order for the party to prevail on that

1    claim or defense.

2    **V.**    **STIPULATIONS AND UNCONTESTED FACTS**

3    Identify any stipulations reached between the parties and any facts that are

4    uncontested.

5    **VI.**    **CONTESTED ISSUES OF FACT**

6    List issues of fact to be tried and determined upon trial.  Each issue of fact must be

7    stated separately and in specific terms, followed by the parties' contentions as to

8    each issue. E.g.:

9    Issue:

10    Plaintiff(s) contends:

11    Defendant(s) contends:

12    **VII.**    **CONTESTED ISSUES OF LAW**

13    The following are issues of law to be tried and determined upon trial. Each issue

14    of law must be stated concisely, separately and in specific terms, followed by the

15    parties' contentions as to each issue. E.g.:

16    Issue:

17    Plaintiff(s) contends:

18    Defendant(s) contends:

19    **VIII.**  **LIST OF WITNESSES**

20    Each party shall provide a list of witnesses intended to be called at trial. As to each

21    witness, identify whether he or she is a fact or expert witness and include a brief

22    statement of the expected testimony of any expert witness.

23

24    The parties shall include the following text in this section of the Proposed Final

25    Pretrial Order: "Each party understands that it is responsible for ensuring that the

26    witnesses it wishes to call to testify are subpoenaed. Each party further understands

27    that any witness a party wishes to call shall be listed on that party's list of witnesses;

28    the party cannot rely on the witness having been listed or subpoenaed by another

party."

## IX.   LIST OF EXHIBITS

Each party shall provide a list of numbered exhibits.  As to each exhibit, the party shall include a description containing sufficient information to identify and distinguish the exhibit.   Further, a statement of either UNCONTESTED or CONTESTED shall follow each listed exhibit.  If contested, a brief statement of the objection by the opposing party shall also follow the listed exhibit.  Exhibits shall be marked according to the instructions received from  the  Court  (which shall be provided approximately two weeks prior to trial).

(e.g. – 1. Laboratory Report from the Clinical Immunology Diagnostic Laboratory dated 6/15/14. CONTESTED by *** for relevance, foundation, hearsay, etc.)

The parties shall include the following text in this section of the Proposed Final Pretrial Order: "Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived."

## X.   LIST OF DEPOSITIONS

Portions of depositions that will be read at trial must be listed by the party intending to introduce the same and must include the page and line number(s). A statement of either UNCONTESTED or CONTESTED shall follow every identified portion of each listed deposition.  If contested, a brief statement of the objection by the opposing party shall follow the listed portion of the deposition to be offered.

The parties shall include the following text in this section of the joint Proposed Final Pretrial Order: "Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be permitted at trial absent good cause."

///

**XI.      JURY TRIAL or BENCH TRIAL**

      A.      <u>For a Jury Trial</u>

Trial briefs (only upon request of the Court), proposed voir dire, deposition testimony, objections to exhibits and depositions, stipulations, interrogatories to the jury, and stipulated jury instructions shall be filed thirty (30) days prior to trial unless otherwise directed by the Court.  Jury instructions which are not agreed upon, together with a concise argument in support of the instruction, shall be filed with the Court and served upon each party at least thirty (30) days before trial. Objections to the non-agreed upon jury instructions shall be filed with the Court and served upon each party fourteen (14) days thereafter.  No replies shall be permitted without prior approval from the Court.  All proposed jury instructions shall conform with Local Rule 51.  Motions in limine shall be filed  no later than thirty (30) days before trial.  Any opposition shall be filed and served fourteen (14) days thereafter.  No replies shall be permitted without prior approval from the Court.

      B.      <u>For a Bench Trial</u>

Trial briefs (only upon request of the Court), objections to exhibits, objections to deposition testimony, motions in limine, and stipulations shall be filed and served at least thirty (30) days prior to trial.  Proposed findings of facts and conclusions of law (only upon request of the Court) shall be filed fourteen (14) days prior to trial, or as otherwise directed by the Court.

**XII.     PROBABLE LENGTH OF TRIAL**

Each party shall identify the estimated length of time it will take to present its case.

**XIII.    ADDITIONAL INFORMATION THAT MAY BE HELPFUL TO THE COURT**

      A.      <u>Pending Motions</u>: Identify all motions that remain pending on the docket as of the date of this Joint Proposed Pretrial Order.

B.      Any other information that may be helpful to the Court.

## XIV.  INFORMATION FOR COURT REPORTER

In order to facilitate the creation of an accurate record, please file a "Notice to Court Reporter" **one week before trial** containing the following information that may be used at trial:

1.      Proper names, including those of witnesses;

2.      Acronyms;

3.      Geographic locations;

4.      Technical (including medical) terms, names or jargon;

5.      Case names and citations; and

6.      Pronunciation of unusual or difficult words or names.

In addition, please send (or transmit electronically) to the court reporter a copy of the concordance from key depositions.

## XV.    CERTIFICATION

Undersigned counsel for each of the parties in this action do hereby approve and certify:

1.      All discovery has been completed.

2.      The identity of each witness has been disclosed to opposing counsel.

3.      Each exhibit listed herein: (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4.      All other form and content of this proposed Joint Pretrial Order.

## XVI.  ADOPTION

The Court may adopt this proposed Joint Pretrial Order at the Pretrial Conference or at a subsequent hearing.


_____          _____

Attorney for Plaintiff                    Attorney for Defendant